Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
Tel – (845) 876-7500
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAOMI TORRES,<br><br>        Plaintiff,<br><br>  v.<br><br>EUROFINS LANCASTER LABORATORIES PROFESSIONAL SCIENTIFIC SERVICES, LLC and any related entities,<br><br>        Defendant. | Complaint<br><br>Civil Action No. _____<br><br>Jury Trial Demanded |

  1. Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, as follows:

### Nature of the Case

  2. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, *et seq.*, and Section 740 of the New York Labor Law ("NYLL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's disability, resulting in Plaintiff's unlawful termination. Plaintiff was also retaliated against for engaging in protected activity.

**Jurisdiction and Venue**

3. Jurisdiction of this Court is proper pursuant to 42 U.S.C. §§ 12117 and 2000e-5.

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 42 U.S.C. §§ 12117 and 2000e-5, as it is a judicial district in the state (New York) in which the unlawful employment practices are alleged to have been committed.

**Procedural Prerequisites**

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC with respect to these charges of discrimination.

8. This action is being commenced within ninety (90) days of receipt of the Notice.

**Parties**

9. At all times material, Defendant Eurofins Lancaster Laboratories Professional Scientific Services, LLC ("Eurofins") was a foreign limited liability company operating in the State of New York.

10. At all times material, Defendant Eurofins was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111.

11. At all times material, Defendant Eurofins had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

12. At all times material, Defendant Eurofins was Plaintiff's employer under the ADA.

13. At all times material, Defendant Eurofins was Plaintiff's employer under the NYSHRL.

14. At all times material, Defendant Eurofins was Plaintiff's employer under the NYLL.

**Plaintiff's Disability**

15. At all times material, Plaintiff was diagnosed with post-concussion syndrome.

16. At all times material, Plaintiff's post-concussion syndrome was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, *inter alia*, learning, concentrating, and thinking, as well as short-term memory.

17. At all times material, Plaintiff's post-concussion syndrome constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevented the exercise of a normal bodily function or was demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

18. At all times material, Plaintiff's post-concussion syndrome, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

19. At all times material, Plaintiff suffered from migraine headaches.

20. At all times material, Plaintiff's migraine headaches was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, *inter alia*, concentrating, working, and sleeping.

21. At all times material, Plaintiff's migraine headaches constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevented the exercise of a normal bodily function or was demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

22. At all times material, Plaintiff's migraine headaches, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

23. At all times material, Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD").

24. At all times material, Plaintiff's ADHD was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, *inter alia*, learning, concentrating, and thinking.

25. At all times material, Plaintiff's ADHD constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevented the exercise of a normal bodily function or was demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

26. At all times material, Plaintiff's ADHD, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

27. At all times material, Plaintiff was diagnosed with neck and/or back injuries.

28. At all times material, Plaintiff's back and neck injuries were an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, *inter alia*, lifting, bending, and performing manual tasks.

29. At all times material, Plaintiff's back and neck injuries constituted (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevented the exercise of a normal bodily function or was demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

30. At all times material, Plaintiff's back and neck injuries, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

31. At all times material, Plaintiff's digestive issues while recovering from a cholecystectomy (or removal of the gallbladder) was an impairment that substantially limited one or more of Plaintiff's major life activities within the meaning of 42 U.S.C. § 12102(1)(A), including, *inter alia*, digestive functions, eating, drinking, and lifting.

32. At all times material, Plaintiff's digestive issues while recovering from a cholecystectomy constitutes (a) a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevented the exercise of a normal bodily function or was demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, within the meaning of NYSHRL § 292(21).

33. At all times material, Plaintiff's digestive issues while recovering from a cholecystectomy, upon the provision of reasonable accommodations, did not prevent Plaintiff from performing in a reasonable manner the activities involved in the job.

## Material Facts

34. In or around April 2024 Plaintiff interviewed for a QC Environmental Microbiology Environmental Monitoring position.

35. Plaintiff was informed that following an additional interview with a regional manager—which she was told would be a mere formality—she would soon receive an offer letter for a position as a Scientist Level 2.

36. At all times material, Plaintiff was qualified for the QC Environmental Microbiology Environmental Monitoring position.

37. At all times material, Plaintiff was qualified for a position as a Scientist Level 2.

38. At all times material, Plaintiff was capable of performing the essential functions of both positions.

39. The interview with regional matter went well, until Plaintiff disclosed that she suffered from a number of disabilities and requested reasonable accommodations for them.

40. Plaintiff disclosed that she suffered from migraine headaches triggered because of photosensitivity, an injured back, and an injured neck.

41. As such, Plaintiff requested the accommodations of a sit-stand desk (for her neck and back) and tinted safety glasses to help with light sensitivity to prevent migraines.

42. Plaintiff also disclosed that she had digestive issues that required her take breaks every two hours for snacks and/or bathroom breaks—at least while she was recovering from a related surgery.

43. Plaintiff had her gallbladder removed to address a condition and disability called biliary dyskinesia.

44. The regional manager became visibly frustrated and threw a piece of paper on his desk.

45. He then cut the interview short.

46. Defendant Eurofins then sent Plaintiff an email rejecting her for the QC Environmental role.

47. Defendant Eurofins rejected her for the QC Environmental role because she disclosed that she was disabled and requested reasonable accommodations.

48. Plaintiff also interviewed for a lower-paying QC Sample Management Tech position, for which she was hired.

49. Plaintiff began working in QC Sample Management in or around April 2024.

50. At all times material, Plaintiff was qualified for the QC Sample Management position.

51. At all times material, Plaintiff was capable of performing the essential functions of the QC Sample Management position.

52. Also in April 2024, Plaintiff formally submitted paperwork requesting reasonable accommodations for multiple disabilities.

53. Plaintiff requested reasonable accommodations related to post-concussion syndrome, migraine headaches, ADHD, back and neck injuries, and digestive issues while recovering from a cholecystectomy.

54. Plaintiff's medical provider requested that she not be required to lift more than 30 pounds, be provided with a sit/stand desk, to wear tinted lenses due to photosensitivity, and breaks every two hours for snacks and/or bathroom breaks.

55. These accommodations would have enabled Plaintiff to perform the core functions of her position.

56. Defendant failed to provide Plaintiff with her requested accommodations.

57. For example, she was never provided a sit/stand desk or tinted glasses for photosensitivity.

58. Defendant corresponded with Plaintiff for some time regarding her requested accommodations, seemingly purporting to engage in the interactive process, but their failure to provide any accommodations demonstrates that this was not done in good faith.

59. Indeed, Plaintiff repeatedly objected to the failure to accommodate her disabilities by following up regarding her requests for accommodation—and even did so approximately one week prior to her unlawful termination.

60. Each time, Plaintiff engaged in protected activity under the ADA and NYSHRL.

61. The only accommodation that Plaintiff was partially afforded was the additional breaks.

62. However, even this was only done grudgingly, and supervisors would repeatedly make comments accusing her of taking too long in the bathroom.

63. These comments contributed to a discriminatory hostile work environment based on Plaintiff's disability.

64. The comments were also made to retaliate against Plaintiff for engaging in protected activity.

65. The manner in which Defendant "accommodated" Plaintiff and commented on her bathroom trips could well have dissuaded a reasonable employee from engaging in protected activity.

66. Defendant created a retaliatory hostile work environment to retaliate against Plaintiff for engaging in protected activity.

67. In addition, on or about May 29, 2024, Plaintiff complained to Christopher Melnick and Benjamin Roth that conditions at her worksite were unsafe.

68. Specifically, she complained that individuals were not wearing personal protective equipment in a dangerous environment.

69. In so doing she engaged in protected activity under NYLL § 740.

70. At all times material, Christopher Melnick had the authority to direct and control Plaintiff's work performance.

71. At all times material, Christopher Melnick had the authority to take corrective action regarding Plaintiff's complaints.

72. At all relevant times, Christopher Melnick was Plaintiff's supervisor under NYLL § 740.

73. At all times material, Benjamin Roth had the authority to direct and control Plaintiff's work performance.

74. At all times material, Benjamin Roth had the authority to take corrective action regarding Plaintiff's complaints.

75. At all relevant times, Benjamin Roth was Plaintiff's supervisor under NYLL § 740.

76. On or around July 1, 2024, Defendant Eurofin terminated Plaintiff with a "Termination Letter."

77. The Termination Letter purported to terminate Plaintiff for performance issues.

78. However, this is a pretext for retaliation.

79. The timing demonstrates that Plaintiff was terminated for disclosing disabilities and requesting accommodations for them as well (*i.e.*, engaging in protected activity under the ADA, NYSHRL, and NYLL).

80. Further, she was terminated approximately a week after she complained about not being provided accommodations.

81. The reaction to Plaintiff's initial requests for accommodation and discriminatory decision to not hire her for the initial position to which she applied demonstrates that she was later terminated because of Defendant's discriminatory animus towards individuals with disabilities.

82. Moreover, Defendant indicated in the Termination Letter that it was terminating Plaintiff because her learning style demanded too much bandwidth.

83. In other words, Defendant indicated that it was terminating Plaintiff because she of her ADHD.

84. Defendant knew or should have known of the discriminatory conduct and failed to take corrective measures within their control.

85. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory termination.

86. The above are just some of the ways Defendant regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

87. Defendant treated Plaintiff this way solely due to Plaintiff's disability and/or because Plaintiff engaged in protected activity.

88. Defendant acted intentionally and intended to harm Plaintiff.

89. Defendant unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff.

90. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

91. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation that such employment entails, special damages, and great inconvenience.

92. Plaintiff has also suffered and will continue to suffer pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

93. Defendant acted maliciously, willfully, outrageously, and with full knowledge of the law.

94. As such, Plaintiff demands punitive damages.

## Causes of Action

### First Cause of Action for Discrimination Under the ADA

95. Plaintiff restates the foregoing allegations.

96. The ADA, at 42 U.S.C. § 12112(a), provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

97. Defendant violated the section(s) cited as set forth.

**Second Cause of Action for Failure to Provide a Reasonable Accommodation
Under the ADA**

98. Plaintiff restates the foregoing allegations.

99. The ADA, at 42 U.S.C. § 12112(b) is entitled "Construction." In relevant part, it provides:

> As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—
>
> . . . .
>
> (5)
>
> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

100. Defendant violated the section(s) cited as set forth.

**Third Cause of Action for Retaliation
Under the ADA**

101. Plaintiff restates the foregoing allegations.

102. The ADA, at 42 U.S.C. § 12203, provides:

> (a)Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b)Interference, coercion, or intimidation

>It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

103. Defendant Eurofins violated the section(s) cited as set forth.

### Fourth Cause of Action for Discrimination Under the New York State Executive Law

104. Plaintiff restates the foregoing allegations.

105. New York State Executive Law § 296(1)(a) provides that:

    >It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

106. In addition, N.Y. Comp. Codes R. & Regs. tit. 9, § 466.11(i)(1), provides:

    >(i) Temporary disabilities.

    >(1) A current employee experiencing a temporary disability is protected by the Human Rights Law where the individual will be able to satisfactorily perform the duties of the job after a reasonable accommodation in the form of a reasonable time for recovery.

107. Defendant violated the section(s) cited as set forth.

### Fifth Cause of Action for Failure to Provide a Reasonable Accommodation Under the New York State Executive Law

108. Plaintiff restates the foregoing allegations.

109. New York State Executive Law § 296(3)(a) provides that:

    >It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee,

13

prospective employee or member in connection with a job or occupation sought or held or participation in a training program.

110. Defendant(s) violated the section(s) cited as set forth.

### Sixth Cause of Action for Retaliation
### Under the New York State Executive Law

111. Plaintiff restates the foregoing allegations.

112. New York State Executive Law § 296 (7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because such person has (i) opposed any practices forbidden under this article, (ii) filed a complaint, testified, or assisted in any proceeding under this article, or (iii) requested a reasonable accommodation under this article."

113. Defendant(s) violated the section(s) cited as set forth.

### Seventh Cause of Action For Retaliation
### Under Section 740 of the NYLL

114. Plaintiff restates the foregoing allegations.

115. By the foregoing, Plaintiff disclosed to a supervisor an activity, policy, or practice of Defendant that Plaintiff reasonably believed violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

116. By the foregoing, Plaintiff objected to or refused to participate in an activity, a policy, or a practice of Defendant that Plaintiff reasonably believed violated a law, rule, or regulation or that the Plaintiff reasonably believed posed a substantial and specific danger to the public health or safety.

117. Plaintiff afforded Defendant a reasonable opportunity to correct the activities, policies, or practices.

118.    Defendant retaliated against Plaintiff, including by suspending and terminating her employment, because Plaintiff disclosed to her supervisors and objected to or refused to participate in such activities, policies, or practices.

119.    As a result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including loss of wages and benefits, emotional distress and mental anguish, and attorney's fees and costs.

120.    Defendant(s) violated NYLL § 740 as set forth.

### Jury Demand

121.    Plaintiff requests a jury trial on all issues to be tried.

### Request for Relief

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA, NYSHRL, and NYLL in that Defendant discriminated against Plaintiff based on Plaintiff's disability and retaliated against Plaintiff and wrongfully terminated Plaintiff due to Plaintiff's disability and because Plaintiff engaged in protected activity;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant' unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff liquidated and/or statutory damages;

F.  Awarding Plaintiff a civil penalty under NYLL § 740;

G.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated: Rhinebeck, New York
December 23, 2025

_____
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff